**TEAMSTERS LOCAL UNION NO. 430, Appellant,**

v.

**CEMENT EXPRESS, INC., Lehigh Portland Cement Company Herman Brothers, Inc. and Bulk, Inc.**

No. 87-5665.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) Feb. 4, 1988.

Decided March 9, 1988.

Rehearing and Rehearing En Banc Denied April 7, 1988.

Ira H. Weinstock, Gerard M. Mackarevich, Ira H. Weinstock, P.C., Harrisburg, Pa., for appellant.

Walter H. Flamm, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellees, Herman Brothers, Inc. and Bulk, Inc.

Before SLOVITER, STAPLETON and MANSMANN, Circuit Judges.

### OPINION OF THE COURT

MANSMANN, Circuit Judge.

Teamsters Local Union No. 430 appeals from a district court order granting the motions of defendants Herman Brothers, Inc. and Bulk, Inc. for an award of counsel fees as sanctions against Local 430 pursuant to Federal Rule of Civil Procedure 11. The defendant companies succeeded on their motions for summary judgment in the underlying action brought by Local 430 under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce an arbitration award against Herman Brothers and Bulk. We affirmed. *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 804 F.2d 1249 (3d Cir.1986).

On the question of Rule 11 sanctions, however, we find that the plaintiff's argument, though unsuccessful, constituted a good faith argument for the extension, modification, or reversal of the existing labor law doctrine of successor liability. Therefore we will reverse the district court's order awarding counsel fees.

## I.

Cement Express, Inc., employed members of Teamsters Local Union No. 430 in executing Cement Express' contract to haul cement for Lehigh Portland Cement Company ("Lehigh"). Cement Express and the union were parties to a collective bargaining agreement containing a comprehensive arbitration clause. The agreement also contained a successorship clause wherein Cement Express undertook to require a purchaser, transferee or lessee of its operation to be bound by the collective bargaining agreement.[1]

In April, 1985, Cement Express obtained Lehigh's assent to the termination of their cartage contract. Lehigh then entered into a cartage contract with Bulk, Inc. for the same route. Bulk, or Herman Brothers, Inc., purchased for Bulk's use a substantial portion of Cement Express' equipment and invited employment applications from all Cement Express employees. According to the union, Bulk offered wages substantially lower than those paid by Cement Express, and invited applications from the public in general after the union refused those terms. Cement Express ceased operations on May 1, 1985 and permanently laid off all of its employees.

The union filed a grievance on May 13, 1985 against Cement Express, Lehigh, Bulk, and Herman Brothers. By grievance, the union sought to determine whether Cement Express had breached its duty to require the assumption by a transferee of its obligations under the collective bargaining agreement. Bulk and Herman Brothers denied being parties to any agreement with the union and did not appear at the arbitration hearing. The arbitrators deadlocked as to whether Cement Express had met its obligations under the agreement, but they upheld the grievance against Bulk and Herman Brothers. The arbitrators decided that Bulk and Herman Brothers were " 'successors' under the law and the contract and were obligated by its terms."

## II.

The union filed an action in the district court seeking enforcement of the arbitration award. Finding that there was no basis in the pleadings for concluding that the defendants had agreed to honor Cement Express' collective bargaining agreement with the union, the district court granted summary judgment for the defend-

---

1. Article 1, Section 1.3 of the agreement provides:

This Agreement and the Supplemental Agreements hereto, hereinafter referred to collectively as "Agreement" shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation, or rights only, are sold, leased, transferred or taken over by sale, transfer lease, assignment, receivership or bankruptcy proceedings, such operation or use of such rights shall continue to be subject to the terms and conditions of this Agreement for the life thereof. On the sale, transfer or lease of an individual run or runs, or rights only, the specific provisions of this Agreement, excluding riders or other conditions, shall prevail. It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this Agreement. The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than thirty (30) days prior to the effective date of sale or thirty (30) days subsequent later. The Local Union shall also be advised of the exact nature of the transaction, not including financial details. In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Local Union, and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, the transferee or lessee has agreed to assume the obligations of this Agreement. When a signator to this Agreement purchases rights from another signator, the purchaser must accept the affected employees of the seller, in accordance with the provisions of Article 5, Section 5.5 before hiring any new employees. The application layoff provisions of this Agreement shall apply. When rights are sold to a non-signator to this Agreement, and such purchaser is the sole bidder, the provisions of this Agreement shall not apply. However, in the event of multiple bids, one or more of such bidders being signator to this Agreement, and the seller elects to sell to a non-signator, then all of the provisions of Article 1, Section 1.3 shall apply.

ants, relying on the general rule in *NLRB v. Burns Security Services ("Burns"),* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) (successor employers not bound by the substantive provisions of a collective bargaining agreement negotiated by their predecessors but not agreed to or assumed by them). We affirmed the summary judgment order, but we relied on the alternate theory that the plaintiff's allegations were insufficient to establish the jurisdiction of the arbitrator either under the collective bargaining agreement or under the labor law doctrine of successorship as set forth in *John Wiley & Sons, Inc. v. Livingston, ("Wiley"),* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) and clarified in *Howard Johnson Co., Inc. v. Hotel Employees,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

The district court also granted the defendants' motion for an award of attorneys' fees against the union under Fed.R. Civ.P. 11. The court characterized the action as "frivolous" because a reasonable inquiry would have revealed that there was no basis for the union's claim and because counsel for the union made no effort to support the allegations in opposition to the defendants' motion for summary judgment. The union now appeals from the fee award, asserting that the claim constituted a good faith argument for the extension of the labor law doctrine of successorship and was therefore not frivolous.

Our review of the imposition or denial of sanctions under Rule 11 is limited to determining whether the district court has abused its discretion. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 485 (3d Cir.1987).

### III.

Federal Rule of Civil Procedure 11 provides in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in

fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The standard for testing conduct under Rule 11 is reasonableness under the circumstances. *Gaiardo* at 482; *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985). As we advised in *Gaiardo,* "[L]itigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment.... Substantially more is required." 835 F.2d at 483. Rule 11 is intended only for exceptional circumstances.

■ We have stated previously that Rule 11 sanctions are proper only in situations which involve signing a paper. *Id.* at 484. We have cautioned that in testing whether the paper was signed in contravention of Rule 11, "the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted." *Id., quoting Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985). For example, Rule 11 "should not be invoked against an attorney who fails to dismiss a case after the opposing attorney submits evidence that a statute of limitations or res judicata bars the suit." *Gaiardo* at 484. Rule 11 sanctions are appropriate regarding the initiation of a lawsuit only if the filing of the complaint constituted abusive litigation or misuse of the court's process.[2]

With these principles in mind, we turn to examine the district court's decision to impose sanctions in this case.

### IV.

■ At the outset we observe that the district court erred in imposing sanctions based in part on the finding that the plain-

---

**2.** We intimate no view as to whether counsel fees and/or costs could have been imposed on a

finding of bad faith. *Ford v. Temple Hospital,* 790 F.2d 342, 348–350 (3rd Cir.1986).

tiff "made no effort under Rule 56 to sustain its allegations." As we noted in *Gaiardo*, Rule 11 sanctions may be imposed only for signing a paper in violation of the rule. 835 F.2d at 484. Rule 11 may not be invoked because an attorney, after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment.

■ We turn now to the district court's main reason for the sanction and examine whether the sanction order may be sustained on the theory that the union's action was frivolous. The complaint in this case alleged essentially that Cement Express had a duty under its collective bargaining agreement with Local 430 to secure the assent of its successors by purchase, transfer or lease to be bound by the collective bargaining agreement. It alleged that defendants Bulk and Herman Brothers were successors of Cement Express. The complaint asserted that a grievance against the defendants had been submitted to arbitration in accordance with the provisions of Local 430's collective bargaining agreement with Cement Express, that the grievance had been upheld by the arbitration panel, and that the employers had refused to abide by the terms of the arbitral award. (We note here that the arbitrator found that Herman Brothers. and Bulk were " 'successors' under the law and the contract and were obligated by its terms.")

In its discussion of the imposition of sanctions, the district court did not refer explicitly to the allegations of the complaint. *Burns*, the case relied upon by the district court in imposing the sanctions, did not involve the duty to arbitrate. 406 U.S. at 286, 92 S.Ct. at 1581. *Burns* merely established that successor employers are not automatically bound by *substantive* provisions of an agreement not agreed to by them. 406 U.S. at 286, 92 S.Ct. at 1581. *Burns* did not deal with the question of when successorship doctrine may bind a transferee of assets to the *procedural* duty to submit to arbitration the question of whether the successor has somehow assumed any of the obligations of the old bargaining agreement.

The union argues vigorously that its complaint was based on an attempt to extend the doctrine of successor liability and did not depend upon the express assumption of liability by the defendants. In general, the successor doctrine is an extra-contractual remedial tool for imposing certain labor obligations on a new employer that has taken over the operations of an old employer. *American Bell Inc. v. Federation of Tel. Workers, ("American Bell")* 736 F.2d 879, 888 (3d Cir.1984). A limited extra-contractual duty to arbitrate was first recognized in *John Wiley & Sons, Inc. v. Livingston, ("Wiley")*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In *Wiley* the arbitrator was held to have jurisdiction to determine what substantive provisions of the bargaining agreement might have survived the transfer of the old employer's operations to the new.

The original arbitration was against the former employer as well as the alleged successors, and was based on the clause of the collective bargaining agreement under which Cement Express was obligated to attempt to obtain the assent of a purchaser to be bound by the collective bargaining agreement. The theory supporting the arbitration is evidenced by the arbitrator's decision as incorporated in the complaint.[3] That theory appears to be that the defendants, having knowledge of Cement Express' obligation under the collective bargaining agreement and perhaps cooperat-

---

**3.** The arbitrator's decision reads as follows:

Based on the facts presented, including the fact that Lehigh Portland Cement arranged the equipment transaction between Cement Express and Herman Brothers/Bulk, Inc.; the fact that all Cement Express former employees were offered employment by Lehigh/Herman Bros./Bulk; that the only two employees used during start-up were former Cement Express employees, and the fact that the two management representatives of Herman Bros./Bulk were fully aware of all terms and conditions, including the successorship obligations of the EACHA when this operation was taken over in this manner, it is the decision of this Committee that Lehigh Portland Cement Company, Herman Brothers, Inc./Bulk, Inc. were "successors" under the law and the contract and were obligated by all its terms. The grievance is upheld.

**70**

ing to some extent in its breach, were bound by their acceptance of the assets to submit to arbitration under the old agreement. We take no position as to possible grounds for imposing such an obligation except to note that a similar theory was advanced in *American Bell.* Rather than rejecting the theory out of hand, we remanded for fuller development of the record, noting that the federal courts had not, to our knowledge, considered the question of whether breach of a restraint-on-transfer clause justified imposition of a duty to arbitrate on a transferee who was aware of the transferor's obligation. *American Bell,* 736 F.2d at 887, n. 18.

The union's tactical error was, perhaps, in proceeding to arbitration in the face of a jurisdictional challenge by the defendants. "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede *judicial* determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *Wiley,* 376 U.S. at 547, 84 S.Ct. at 913 (emphasis added).

We note, however, that Rule 11 was designed to penalize abuse of district court process, not an improper submission to arbitration. Whether brought as an action to compel arbitration or as an action to confirm an arbitral award, the threshold question is the same in determining whether the action is a frivolous one. The Rule 11 question in either case is whether, at the time he filed the complaint, counsel for the union could reasonably have argued in support of the arbitrator's jurisdiction over the controversy.

The complaint in this case relied upon an expanded theory of the arbitrability of successor liability which, while novel and unsuccessful, was not plainly unreasonable. Summary judgment is sanction enough for the union's failure to allege facts sufficient to support the claim. We find that the district court abused its discretion in awarding attorneys' fees under Rule 11.

Accordingly, we will reverse the order of the district court.