**Leon M. MARTIN, an individual, Plaintiff,**

**v.**

**Harold Ed BROWN, an individual, and Kyle Energy, Inc., a Pennsylvania corporation and Emmett Lehman, an individual, Roberta Ann Brown, t/d/b/a Kyle Energy, Inc., Kyle Energy and Kyle Energy Corporation, Eunice Lehman, Kyle**

---

Energy, Kyle Energy Corporation, a Pennsylvania corporation, Kyle Energy, Inc., N.V., a foreign corporation, Apex Corporation, a foreign corporation, G. Doyle Steele, Adobe Resources Corporation, a Delaware corporation, formerly known as Adobe Oil and Gas Corporation, Lloyd DeVos d/b/a DeVos and Company, Susan E. Thorstenn, Able Company, Ltd., a Pennsylvania corporation, Tracy Lynn Brown, Terri Beth Brown, Lori Brown, Linda Brown and Julie Brown, a minor by and through Harold Ed Brown and Roberta Ann Brown, her parents, Defendants.

V. Wesley MCGAHA and Donna McGaha, individually, and t/d/b/a MCG Associates, a Partnership, Plaintiffs,

v.

Harold Ed BROWN, individually and t/d/b/a Kyle Energy, Inc., Kyle Energy, Kyle Energy Corporation and Apex Corporation, Roberta Ann Brown, individually and t/d/b/a Kyle Energy, Inc., Kyle Energy, and Kyle Energy Corporation, Kyle Energy, Kyle Energy, Inc., Kyle Energy Corporation, a Pennsylvania corporation, Kyle Energy, Inc., N.V., a foreign corporation, Apex Corporation, a foreign corporation, G. Doyle Steele, Adobe Resources Corporation, a Delaware corporation, formerly known as Adobe Oil and Gas Corporation, Lloyd Devos d/b/a Devos and Company, Susan E. Thorstenn, Able Company, Ltd., A Pennsylvania corporation, Tracy Lynn Brown Miller, Terri Beth Brown Zinchini, Lori Brown Shumaker, Linda Brown, and Julie Brown, a minor, by and through Harold Ed Brown and Roberta Ann Brown, her parents, Defendants.

Civ. A. Nos. 86–1239, 87–1771.

United States District Court,
W.D. Pennsylvania.

April 29, 1993.

David Cullis, Thomas E. Rodgers, Rodgers, Rodgers, Cullis and Alm, P.C. Greenburg, PA, for plaintiffs.

Rebecca E. Bender, Bender and Associates, Minneapolis, MN, Russell J. Ober, Jr., Richard W. Hosking, Pittsburgh, PA, for defendants.

## OPINION

LEE, District Judge.

Before the Court are several motions for sanctions that have been filed pursuant to Fed.R.Civ.P. 11 by some of the dismissed defendants against all plaintiffs and their attorneys, as well as several miscellaneous motions. The plaintiffs and former defendants have submitted memoranda in support of their respective positions and have supplemented their motions, responses and memoranda. Hearings were held on February 1, 1993, and April 8, 1993, following notice.

The background of this consolidated case is set forth in some detail in the prior Opinion and Orders of October 23, 1990, and supplemental Order of November 9, 1990, wherein this Court granted defendants' motions for summary judgment as to most of the claims set forth in plaintiffs' complaints. *Martin v. Brown*, 758 F.Supp. 313 (W.D.Pa. 1990).[1] Dismissed was all of plaintiffs', V. Wesley McGaha and Donna McGaha's, complaint alleging civil RICO[2] violations, federal securities fraud and pendent state claims[3] against all 17 defendants at Civil Action No. 87–1771. Also dismissed were plaintiff Martin's RICO claims against all defendants and his securities fraud and pendent state claims against all defendants except Harold Ed Brown, Kyle Energy, Inc., Kyle Energy and Kyle Energy Corporation, (hereafter collectively referred to as "domestic Kyle Energy") at Civil Action No. 86–1239. The only claims remaining are Martin's against defendants Harold Ed Brown, and domestic Kyle Energy for securities fraud under Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78a, *et seq.*, and Securities Exchange Commission Rule 10(b–5) at Count 1, and his pendent state claims for fraud and deceit, principles of agency, negligence and breach of contract (Counts 3–6).

### MOTIONS FOR SANCTIONS (ATTORNEYS' FEES) UNDER RULE 11

The dismissed defendants have requested that attorneys' fees and costs be imposed against plaintiffs and their attorneys for filing complaints against them that were not well founded, in violation of Fed.R.Civ.P. 11.

Since 1983 when it was completely rewritten, Rule 11 provides:

Every pleading, motion and other paper ... shall be signed.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

 The signature of an attorney or a party on a complaint, motion or other pleading certifies that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without improper motive. *Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Rule 11 motions are not routine in the Third Circuit; imposition of Rule 11 sanctions are, and should be, the exception. Burbank, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11*, American Judicature Society (1988) hereinafter "Burbank"; *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987). As the Third Circuit reiterated in *Gaiardo*, Rule 11 is not to be used whenever parties disagree about the correct resolution of a matter litigated and "is intended only for exceptional circumstances." *Id.* (citation omitted). Thus, "when issues are close, the invocation of Rule 11 borders on the abusive...." *Id.*

 Mere failure to succeed does not trigger a Rule 11 sanction and such sanctions do not automatically follow an adverse ruling on a motion for summary judgment or motion to dismiss. *Id.* Avoiding the wisdom of hindsight, courts must judge the signer's conduct by what was "reasonable to believe at the time the pleading, motion or other paper was submitted." Fed.R.Civ.P. 11, Advisory Committee Note; *Eavenson, Au-*

---

1. The Third Circuit Court of Appeals dismissed plaintiffs' appeal from these orders on January 7, 1991, for want of appellate jurisdiction.

2. Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. 1961, *et seq.*

3. This Court declined to exercise supplemental jurisdiction over the pendent state claims remaining against those defendants that had been completely dismissed from the case, and dismissed those state claims without prejudice.

*chmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir.1985). The proper focus is on whether the complaint or other paper constitutes "abusive litigation or misuse of the court's process," and, in that light, Rule 11 sanctions are inappropriate simply "because an attorney, after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988), quoting *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68–69 (3d Cir.1988).

■■■ Rule 11 imposes upon the signer an objective standard of reasonable pre-filing inquiry and does not require a finding of bad faith. *Business Guides; Gillette Foods, Inc. v. Bayernwald–Fruchteverwertung*, 977 F.2d 809, 813 (3d Cir.1992). The Rule is invoked only in situations involving signing of a pleading, and does not impose a continuing duty to withdraw the pleading if the signer subsequently discovers but does not correct a fatal defect, such as where opposing counsel submits evidence that a statute of limitations or the doctrine of *res judicata* bars suit. *Cement Express*, 841 F.2d at 68, citing *Holtzman*.

In *Lingle*, the Third Circuit reversed the district court's award of attorneys' fees as the Rule 11 sanction imposed for plaintiff's counsel's failure to reasonably investigate the facts and research the law before filing a three-count antitrust complaint under the Sherman Act.[4] The *Lingle* Court identified five factors for the district courts to consider in gauging the reasonableness of an attorney's pre-filing inquiry: (i) the amount of time available to the signer for conducting the factual and legal investigation; (ii) the need to rely upon the client for the underlying factual information; (iii) the plausibility of the legal position advanced; (iv) whether the case was referred to the signer by another attorney; and (v) the complexity of the legal and factual issues involved. *Lingle*, 847 F.2d at 95. The Fifth Circuit has added another salient factor consistent with *Lingle*,

namely "the extent to which development of the factual circumstances underlying the claim requires discovery." *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (*en banc*).

In ruling that plaintiff's counsel had made adequate pre-filing inquiry, the Third Circuit panel in *Lingle* made the following observations:

> Proving a conspiracy is usually difficult and often impossible without resort to discovery procedures. This is particularly true in antitrust actions, where "the proof is largely in the hands of the alleged conspirators." *Potter v. Columbia Broadcasting Sys. Inc.*, 368 U.S. 464, 473 [82 S.Ct. 486, 491, 7 L.Ed.2d 458] (1962). *A requirement that counsel, before filing a complaint, secure the type of proof necessary to withstand a motion for summary judgment would set a pre-filing standard beyond that contemplated by Rule 11.* At the time plaintiffs' counsel filed the complaint here, he knew facts that supported a *reasonable suspicion* of cooperation between defendants and other parties who could have been expected to benefit from the defendants' intransigence. These factual circumstances and the *rational inferences* that may be drawn from them convince us that the allegations of the first count comported with Rule 11's pre-filing investigation requirement.

847 F.2d at 95 (emphasis added).

Martin's third amended complaint filed on July 28, 1987, names as additional defendants, *inter alia:* Roberta Ann Brown (Harold Brown's wife); Tracy Lynn (Miller) Brown, Terri Beth (Zinchini) Brown, Lori (Shumaker) Brown, Linda Brown and Julie Brown (Harold and Roberta Brown's daughters, ages 16 to 26 at the time); Lloyd De-Vos, Susan E. Thorstenn, and C. Doyle Steele, (attorneys who performed legal services for Harold Brown, domestic Kyle Energy and the foreign Kyle Energy, Inc., N.V., of the Netherlands Antilles); and Adobe Resources Corporation (which sold the gas wells

---

4. The district court awarded $5,000.00 in attorneys' fees although the defendants had paid fees exceeding $32,000.00. In dictum, the Third Circuit indicated that, were sanctions appropriate, the $5,000.00 award for attorneys' fees would have been "well within its discretion." 847 F.2d at 94 n. 2.

and/or leases to Harold Brown and Kyle Energy which were quickly resold to plaintiffs and others). Attorneys Thomas E. Rodgers and David Cullis signed this third amended complaint. The McGaha complaint, filed August 24, 1987, names as original defendants all of the original and additional defendants named in the Martin complaint, and sets forth essentially the same factual and legal allegations. Signators to this complaint were attorneys Rodgers and Steven W. Alm.[5]

## A. ADOBE RESOURCES CORPORATION

■ Adobe asserts there was no factual or legal bases for plaintiffs' RICO, federal securities fraud or Pennsylvania common law claims against it. Specifically, Adobe claims plaintiffs failed to allege sufficient facts to justify asserting any of the necessary RICO elements, such as existence of an enterprise, pattern of racketeering activity or predicate acts, and that Adobe's sale of 100% of its interests in the gas wells/leases to Harold Brown/Kyle Energy did not constitute a sale of "securities" under the Securities Act of 1934. Adobe's supplemental motion for Rule 11 sanctions, filed after this Court granted its motion for summary judgment, adds the defect that the securities claims against it were barred by the applicable statute of limitations (as this Court ruled in its prior Opinion) as another basis for finding a Rule 11 violation. Adobe requests this Court award reasonable attorneys' fees and costs in the amount of $106,418.60.

■ Plaintiffs and plaintiffs' counsel[6] state generally, in response to Adobe's motion for sanctions as well as the other dismissed defendants' motions, as follows:

Plaintiffs conducted a great deal of discovery and factual investigation, increased their library regarding RICO, attended a seminar in RICO and performed extensive legal research of not only 18 USC Section 1962, et seq., but also the various criminal statutes defining the predicate acts alleged and the law of conspiracy. Many of the areas of law, particularly in the RICO sections, are ill defined due to their relatively recent enactment and the even more recent appellate court decisions on what the legislature intended when it enacted the RICO statutes.

Plaintiffs and their counsel, through their extensive inquiry, both factual and legal, determined that the allegations against this Defendant were:

A. Well grounded in fact;

B. Warranted by existing law or a good faith argument for a change in existing law; and

C. Not interposed for an improper purpose.

At the time that Plaintiffs' counsel signed Martin's Third Amended Complaint (and all other pleadings and motions) and McGahas' Complaint, counsel for Plaintiffs and Plaintiffs were in compliance with Rule 11 and they continue to be in compliance with Rule 11.

Plaintiffs' Reply to Defendant Adobe's Supplemental Motion for Sanctions, Etc. (Document No. 295) at 3–4. Specific to Adobe, plaintiffs also assert:

Counsel for Plaintiff interviewed numerous witnesses, did extensive legal research, conducted discovery, performed or had performed extensive search of public records, reviewed over 6000 pages of documents produced by Adobe and others, obtained expert opinions, examined an employee of Adobe during hearing, among other things, prior to naming Adobe as an additional defendant.

---

5. At the time of filing the complaints, plaintiffs were represented by the law firm of Rodgers, Rodgers, Cullis and Alm, P.C. Mr. Alm is no longer with the firm.

6. Plaintiffs are represented on these Rule 11 motions by attorneys Rodgers Cullis and Alm who have not retained separate counsel to defend them against the substantial claims for attorneys' fees. Where a Rule 11 motion against both a party and its counsel is not plainly without merit, and the sanctions requested include substantial attorneys' fees, an obvious potential for conflict exists, and withdrawal *might*, under certain circumstances, be advisable. *See e.g., Holtzman, supra,* 775 F.2d at 537–38. This Court expresses no opinion on whether this case presents such a conflict or such circumstances. *See Burbank, supra,* at 41–42.

588

Plaintiffs have adequately pled RICO claims, security claims and pendent state claims. Plaintiffs have supported such claims by evidence obtained by their counsel.

*Id.* at 17.

The evidence available at the time of signing the complaints included that Adobe had sold numerous worthless gas wells or leases or working interests in the wells to Brown, most for $500.00, which Brown immediately resold to plaintiffs at wildly inflated mark-ups for huge profits, and that Adobe was aware of Brown's intention and plan to resell these gas well/leases and/or partnership interests to unsuspecting investors such as Martin and the McGahas. In two interviews conducted in March 1986 and April 1987, an Adobe employee, Albert Kucharski, advised plaintiffs' attorneys that Adobe dumped a number of unproductive gas wells in order to avoid the expense of "plugging" them as required by pending state legislation, and they sold to Brown knowing he did not have a good reputation in the industry and aware of Brown's plan to sell to unsophisticated investors by fraudulent means. Plaintiffs' Response to Defendant Adobe's Supplemental Memorandum in Support of Motion for Sanctions (Document No. 359) at 3–5 and Exhibit 1, Memorandum of Kucharski interview dated March 28, 1986, stating *inter alia,* that Kucharski said "it was a known fact in the oil and gas industry in Western Pennsylvania that Mr. Brown was the biggest crook around," and that Adobe was "extremely wary in dealing with him and ... his reputation was really bad;" Plaintiffs' Brief Opposing Adobe's Motion for Summary Judgment (accompanying Plaintiffs' Response, Document No. 229), Kucharski Affidavit (unsigned), unnumbered exhibit, stating, *inter alia,* that he (Kucharski) was under orders to get the wells sold before the new state law requiring owners to plug unproductive wells came into effect, that Adobe knew they were selling liabilities to Brown knowing Brown would resell and did not care that he would "fuck the investors," because his assets were safely protected in a foreign corporation.

■ Counsel is not required "before filing a complaint, [to] secure the type of proof necessary to withstand a motion for summary judgment...." *Lingle,* 847 F.2d at 95. At the time plaintiffs filed their complaints against Adobe, they were aware of facts that "supported a reasonable suspicion of cooperation" between Brown and Adobe that raised a "rational inference" that Adobe may have participated in Brown's fraudulent scheme (alleged) to sell worthless gas wells, leases and partnership interests to unsuspecting investors. Although this Court ultimately determined there was insufficient evidence to sustain a RICO claim against any of the defendants under 18 U.S.C. § 1962(a), (b), (c) or (d), civil liability under RICO is and has been a dynamic, complex and often confusing area of the law, both to attorneys and the federal courts. *E.g., O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 709 (2d Cir.1990) ("It is true that some aspects of the law under RICO may still be somewhat unclear, as suggested by the district court. Our circuit, like most others around the country, has had great difficult with the RICO concepts of 'pattern' and 'enterprise.'...." (citations omitted)); *Rose v. Bartle,* 871 F.2d 331, 357–58 (3d Cir.1989) (recognizing that until 1989, it was unsettled in this circuit whether "investment injury" was a necessary element of a RICO claim under § 1962(a), and holding that it was).

Also, if post-filing discovery had been able to support plaintiffs' reasonable suspicions that Adobe participated in a fraudulent scheme (*e.g.,* as a member of a "conspiracy" or an "enterprise" engaged in a "pattern of racketeering," or perhaps as an aider and abettor) then plaintiffs' securities claims might have survived the statute of limitations defense. *See Monsen v. Consol. Dress Beef Co.,* 579 F.2d 793 (3d Cir.), *cert. denied* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978) (recognizing aider and abettor liability in securities fraud cases). Plaintiffs did not allege that Adobe's sale of its interests in gas wells/leases to Brown was *itself* a Securities Act violation that injured them, but that Adobe's active participation in Brown's fraudulent scheme in the gas wells/leases subjected Adobe to liability, and Browns' securities fraud was within the statute of limitations. *Martin v. Brown,* 758 F.Supp. at

324. At the time plaintiffs' complaints were filed, therefore, there was a reasonable possibility that the securities fraud claims against Adobe were timely under the governing statute of limitations.

As to Adobe's claim that 100% of its interest in a gas well cannot constitute a "security" under the Securities Act of 1934, again plaintiffs' allegations were that Adobe participated in *Brown's* securities fraud. As will be discussed later in this Opinion, the gas wells/leases and/or partnership interests are arguably "securities" as defined by federal securities law, and, at the time of filing, plaintiffs' securities claims were at least plausible, even though they did not develop to this Court's satisfaction enough facts during discovery to demonstrate Adobe's actual participation in Brown's scheme. To paraphrase the *Lingle* court, proving a conspiracy, an enterprise or a pattern of racketeering "is usually difficult and often impossible without resort to discovery procedures." 847 F.2d at 95.

Considering all of the circumstances, including the complexity of the legal and factual issues involved, the plausibility of the legal positions advocated, the undisputed extensive pre-filing investigation plaintiffs conducted which raised a reasonable suspicion that Adobe was a "player," the extent to which development of the factual circumstances required discovery, and extensive legal research into the federal Securities Acts and RICO, there are no "exceptional circumstances" which warrant imposition of sanctions under Rule 11. Counsel made a reasonable inquiry into the law and facts, was satisfied that the complaints against Adobe were well grounded and there is no evidence that plaintiffs or their attorneys had any improper motives in naming Adobe as a defendant.

Adobe argues, however, that it submitted "uncontroverted affidavits" with its motion for summary judgment which conclusively demonstrate Adobe and Brown had no agency relationship and that Adobe did not assist Brown in his allegedly fraudulent scheme in any way, that a subsequent Kucharski deposition recanted his earlier interview statements, and that the second such interview

was illegal because it was tape recorded without Kucharski's consent in violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act. 18 Pa.C.S. §§ 5701–5726. These *post-filing* matters have no bearing on what plaintiff's pre-filing investigation turned-up or the reasonableness of counsel's suspicions and inferences *at the time of filing*; this Court does not review the complaints through the wisdom of hindsight. Accordingly, neither plaintiff nor counsel have violated Rule 11, in naming Adobe an additional defendant, and Adobe's motions and supplemental motions for Rule 11 sanctions will be denied.

### B. ROBERTA ANN BROWN, TRACY LYNN BROWN MILLER, TERRY BETH BROWN ZINCHINI, LORI BROWN SHUMAKER, LINDA BROWN AND JULIE BROWN

These dismissed defendants, collectively referred to herein as the Brown defendants, filed their initial motion for sanctions pursuant to Rule 11 against all plaintiffs and attorneys Rodgers and Cullis. (Document No. 273) The Brown defendants assert there was no theory of liability that would expose them to liability for any injuries that were alleged to have occurred to the plaintiffs from the purchase of interests in the gas wells/leases from original defendants, Harold Brown and domestic Kyle Energy. The Brown defendants also suggest that naming them as additional defendants was for an improper motive, namely harassment of Harold Brown's family.

Prior attorneys entered appearances in this case on behalf of all of these dismissed defendants and on behalf of original defendants, Harold Brown and Kyle Energy, and represented all of these defendants at all times relevant to the Rule 11 motion. Currently, the dismissed defendants Brown are represented by attorney Rebecca E. Bender, who has also entered her appearance on behalf of remaining defendants, Harold Ed Brown and Kyle Energy.

As to Roberta Ann Brown, plaintiffs state that their pre-filing investigation "uncovered recorded documents apparently designed to make Defendant Harold Ed Brown appear to

be judgment proof. These included a mortgage and a release of mortgage against property owned by the Browns. Defendant Roberta Ann Brown also apparently unlawfully authorized her husband, Defendant Harold Ed Brown, to notarize documents on her behalf. Defendant, Roberta Ann Brown, was therefore properly joined as a defendant." Plaintiffs' Response to Dismissed Defendant Brown's Supplemental Memorandum (Document No. 353) at 2–3. The Court agrees with the plaintiffs that, at the time of filing, facts existed that supported a "reasonable suspicion of cooperation" between Roberta and Harold Brown raising a rational inference that Mrs. Brown was a "player." Her Commonwealth of Pennsylvania notary seal was used with her apparent permission on numerous corporate documents, including mortgages, loan applications, and corporation filings with the Secretary of the Commonwealth. Also, Roberta Brown was listed as Treasurer for Able Company in its registry statement, as she concedes. Able Company was a company plaintiffs could reasonably have suspected was set-up to help Mr. Brown and domestic Kyle Energy hide or shield assets gained from their alleged fraudulent sale of interests in gas wells/leases especially in light of what plaintiffs learned from Adobe employee, Mr. Kucharski. Accordingly, the Court finds no Rule 11 violation in naming Roberta Ann Brown as a defendant in this action because there was a reasonable suspicion and a rational inference she was involved in the ongoing enterprises, even if she did not participate in the sale of the gas well/lease interests to plaintiffs.

However, plaintiffs point to nothing on the record to support a rational inference that the five Brown daughters may have participated in the alleged RICO and securities fraud scheme. Virtually their *only* connection to such a scheme is that they were beneficiaries of the Kyle Energy Settlement Trust Fund, a foreign trust apparently created by Harold and Roberta Brown and the domestic Kyle Energy companies. These defendants maintain, moreover, that they have never received any distributions from the foreign trust, and plaintiffs offer nothing to refute that claim. Plaintiffs construct an argument, based on conjecture and hypothet-

ical occurrences that, if a number of events were to happen, the daughters *might* be in a position of control of the trust fund, and that *potential* control of the fund exposes them to RICO liability.

Plaintiffs do not cite any authority for their bold proposition that, merely because these daughters were beneficiaries of the trust fund or had some theoretical *possibility* of control over the fund in the future, they can be liable as participants in the alleged scams that may have generated income contributed to the res of the fund. Although it is true, as plaintiffs state, that the RICO net is "woven tightly to trap even the smallest fish," *United States v. Elliott*, 571 F.2d 880 (5th Cir.1978), this Court's research has not uncovered any case where fish as small as these have been trapped. There is nothing of record to indicate that the Brown daughters ever took part in or aided and abetted any RICO enterprise or securities fraud conspiracy or scheme involving the gas wells/leases. Accordingly, the Court finds that attorneys Rodgers and Cullis violated Rule 11 in filing complaints against the Brown daughters in this action, and it is mandatory that sanctions be imposed for this violation.

As the Brown defendants point out, once "this Court has found a violation of Rule 11, this Court has discretion as to the precise sanctions to impose. *See Doerring v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 195–96 (3d Cir.1988)." Motion for Sanctions (Document No. 273) at 8. It would be inappropriate to award attorneys' fees for this Rule 11 violation, in light of the fact that all of the Brown defendants, *including* the remaining defendants at Civil Action No. 86–1239, have been represented throughout most of these proceedings by the same attorneys at any given time. The Court finds that very little work was expended by these attorneys solely on behalf of the Brown daughters. The Court further finds that it would be a wasteful use of judicial and private sector resources to hold additional evidentiary hearings to determine the precise percentage of that representation attributable solely to these dismissed Brown defendants. The costs of such additional satellite

litigation far outweigh any conceivable benefits of an award of attorneys' fees. Additionally, the Court finds no evidence of bad faith on the part of plaintiffs or their attorneys in naming the Brown daughters as defendants.

■ In order to deter future groundless filings by these plaintiffs and/or their attorneys, the Court finds it is appropriate to impose a fine of $200 for each Brown daughter named in this action, or a total of $1,000 against attorneys Rodgers and Cullis. Additionally, counsel will be required to attend a seminar by an organization certified by the Supreme Court of Pennsylvania regarding Rule 11 sanctions on or before August 31, 1993, and promptly file proof thereof with this Court. This requirement is in addition to the five hours of continuing legal education credits required of these attorneys by the Continuing Legal Education Board on a yearly basis.

An appropriate Order will be entered.

## C. LLOYD DeVOS

■ Dismissed defendants Lloyd DeVos and Susan Thorstenn were named because of the professional legal services they rendered to Harold Brown and domestic Kyle Energy, which included setting up Kyle Energy, Inc., N.V. of the Netherlands Antilles, and the foreign Kyle Energy Settlement Trust Fund, organized under the laws of the British Virgin Islands. DeVos was the principal and Thorstenn an associate of the law firm, DeVos and Company, P.C., of New York, New York. DeVos seeks Rule 11 sanctions/attorneys' fees from attorneys Rodgers and Alm in the amount of approximately $47,000.[7] In response, counsel for plaintiffs argue there were facts of record known prior to filing that raised a reasonable suspicion attorneys DeVos and Thorstenn may have helped Harold Brown and domestic Kyle Energy shield their "ill gotten" gains from alleged RICO activities and the fraudulent securities scam.

■ There is little question that "outsider" professionals such as attorneys and accountants who participate and/or assist in the

furtherance of a racketeering enterprise or a securities fraud conspiracy may be held civilly liable for RICO violations, assuming all of the other elements of a RICO cause of action have been met. See generally Roddy, RICO in Business and Commercial Litigation, § 5.07, Professionals' Liability Under RICO (New), (Shepard's/McGraw–Hill, Inc. December, 1992). See Bank of America National Trust and Savings Ass'n. v. Touche Ross and Co., 782 F.2d 966 (11th Cir.1986); Odesser v. Continental Bank, 676 F.Supp. 1305, 1312 (E.D.Pa.1987) (recognizing potential RICO liability of lawyers). See also Mathews, Shifting the Burden of Losses in the Securities Markets: The Role of Civil RICO in Securities Litigation, 65 Notre Dame L.Rev. 896 (1990). Nevertheless, there was little in this case that would lead a reasonable attorney to believe that DeVos and Thorstenn were participating in a RICO enterprise or any fraudulent securities transactions. The power of attorney granted to DeVos and Thorstenn, upon which plaintiffs primarily relied, granted "extremely limited powers ... in order for such attorneys to more readily convey a service to their client," namely to qualify Kyle Energy, Inc., N.V. to do business in Pennsylvania and other states. On that basis, this Court granted DeVos' and Thorstenn's motion for summary judgment. 758 F.Supp. at 318.

However, there was one fact known by plaintiffs prior to filing their complaints against DeVos and Thorstenn which, arguably, supported a reasonable suspicion that DeVos and Thorstenn were "players" along with Harold Brown and domestic Kyle Energy. DeVos and Thorstenn filed or caused to be filed with the Secretary of the Commonwealth of Pennsylvania certain forms and documents required for the dissolution of domestic Kyle Energy that contained the false statement "There are no actions pending against the corporation [Kyle Energy Corporation] in any court." Exhibit No. 3, Plaintiffs' Response to Defendant Lloyd DeVos' Supplemental Memorandum in Support of Motion for Sanctions Pursuant to Rule 11 F.R.C.P. (Document No. 354). As shown in

---

7. Dismissed defendant DeVos does not request sanctions be imposed upon plaintiffs or attorney Cullis.

documents attached to other previously filed pleadings, *e.g.* Exhibit 1, Westmoreland County Court of Common Pleas Complaint at No. 4400 of 1985, *Integrity Funding Systems v. Harold Ed Brown ... t/d/b/a Kyle Energy Corporation*, attached to Brief in Support of Motion for Preliminary Injunction, filed in Support of Motion for Preliminary Injunction Hearing (Document No. 16, filed March 9, 1987), there were indeed lawsuits filed against Kyle Energy, including one involving claims similar to plaintiffs'.

As the Third Circuit stated in *Lingle*, at the time plaintiffs' counsel filed the complaints against DeVos and Thorstenn, they "knew facts that supported a reasonable suspicion of cooperation between defendants and other parties who could have been expected to benefit from the defendants' intransigence. These factual circumstances and the rational inferences that may be drawn from them convince [this court] that the allegations of the first count comported with Rule 11's prefiling investigation requirement." 847 F.2d at 95. Although the fact of filing a document with the Secretary of the Commonwealth that contained the false statement there were no lawsuits pending against domestic Kyle Energy was not "the type of proof necessary to withstand a motion for summary judgment," nevertheless a rational inference could be drawn from that fact sufficient to withstand Defendant DeVos' motion for sanctions under Rule 11. Accordingly, DeVos' motion will be denied.

### D. C. DOYLE STEELE

Defendant, C. Doyle Steele, is also an attorney who provided certain legal services to Harold Brown and domestic Kyle Energy relating to the restructuring of the corporations. Steele's motion for Rule 11 sanctions is not ripe because, at the hearing on April 8, 1993, counsel were granted leave to file additional supporting material within 20 days from the filing of the transcript of that hearing (which occurred on April 21, 1993).

### E. CURRENT DEFENDANTS' MOTION TO CERTIFY ISSUE FOR APPEAL AND TO STAY PROCEEDINGS OR FOR ALTERNATIVE RELIEF

The remaining defendants have asked this Court "to certify for appeal the issue of whether or not the investments at issue in this matter are securities as defined under the federal securities laws," (Document No. 345) at 1, and to stay the proceedings pending such appeal. These defendants have also filed a Motion for Leave to File Reply Memorandum of Points and Authorities (Document No. 361) in reply to Plaintiffs' Response to Defendants' Motion to Certify Issue for Appeal, etc. (Document No. 357). This Court will grant defendants' motion for leave to file a reply memorandum of points and authorities, but will deny defendants' motion to "certify issue for appeal" and other relief, for several reasons.

First, district courts do not certify "issues" for appeal, although they may certify certain interlocutory *orders* for appeal pursuant to 28 U.S.C. § 1292(b). It is not clear what *order* defendants would have the Court certify for appeal. The Court's orders of October 23, 1990, and November 9, 1990, implicitly held that the interests sold in gas wells/leases were securities, and the Third Circuit declined to hear plaintiffs' appeal from that decision. Contrary to defendants' assertion that the "securities" *issue* "fell through the cracks," these defendants fully briefed this issue in their motion for summary judgment, 758 F.Supp. at 317, and this Court considered and implicitly ruled on this issue in a manner adverse to the defendants. 758 F.Supp. at 325.

Second, defendants recently attempted to reopen the "securities" issue by motion of November 23, 1992, to amend this Court's scheduling order, which motion contained a request to allow defendants "to file dispositive motions including a motion for summary judgment based on the absence of a 'security' in this case." (Document No. 326). This Court denied that request by order of December 30, 1992, which stated, *inter alia:* "The parties have had more than ample opportunity to have filed dispositive motions." (Document No. 334).

Third, interlocutory appeal of such "issue" is inappropriate because this Court cannot certify that a substantial basis exists for a

difference of opinion on the issue, nor is an immediate appeal likely to materially advance the termination of the litigation. Fed. R.App.P. 5(b); 28 U.S.C. § 1292(b). Even if this Court were to certify this "issue" for appeal, the Court could not grant defendants' additional request for a stay of proceedings pending disposition of that appeal. Such a stay could only be granted if the Court determined that defendants were likely to prevail on the merits of this issue on appeal. Based on the record before this Court, including the January 1993 deposition of plaintiff Leon Martin, there is *at least* a question for the finder of fact on the issue of whether defendants' sale of their interests in gas wells/leases to plaintiff Martin were securities within the meaning of 15 U.S.C. § 77b(1), and cases defining "securities" in this context. Under the Securities Acts, the term "security," unless the context otherwise requires, includes any "certificate of interest or participation in any ... oil, gas, or other mineral royalty or lease ... [or] investment contract...."

Although defendants claim that they sold 100% of their interests in the gas wells/leases to Martin, it is at least a jury question whether defendants in fact sold 100% of their interests or some lesser fractionalized undivided percentage to Martin and other investors. Under the circumstances presented, a jury could rationally find that Martin purchased "fractional undivided interests" in the various gas wells and leases or that Brown/Kyle Energy entered into "investment contracts" with Martin whereby Brown/Kyle Energy would operate and manage the gas wells exclusively. In either event, the defendants' interests sold to Martin would constitute "securities" within the meaning of the federal securities law. *See, e.g., Penturelli v. Spector, Cohen, Gadon & Rosen,* 779 F.2d 160, 163–67 (3d Cir.1985); *Adena Exploration, Inc. v. Sylvan,* 860 F.2d 1242 (5th Cir.1988); *Simon Oil Co. v. Norman,* 789 F.2d 780 (9th Cir.1986). *Cf. Ballard & Cordell Corp. v. Zoller & Danneberg Exploration, Ltd.,* 544 F.2d 1059 (10th Cir.1976).

Finally, the Court is hardpressed to accept defendants' characterizations of the "shocking admissions in" plaintiff Martin's deposition of January 1993, that "the plaintiff has made admissions that the investments at issue were not securities." Defendants' Memorandum in Support of Defendants' Motion to Certify Issue, etc. (Document No. 346) at 3. Viewed in isolation, or in context, Martin's deposition statements certainly do not amount to an admission there were no "securities" sold to him by the defendants; in fact, the *entire* deposition taken as a whole, supports a finding that "securities" were indeed sold and purchased. For all of the above reasons, this Court will not "certify the issue for appeal" or stay the proceedings. This case has dragged-on far too long and burdened the judicial system far too much as it is.

### F. *PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO RULE 37 AND BRIEF IN SUPPORT THEREOF AND REQUEST FOR LEAVE TO EXPAND*

Plaintiffs have filed a 63–page pleading, with more than twice that number of appendix pages, entitled Motion for Sanctions Pursuant to Rule 37 and Brief in Support Thereof, and Request for Leave to Expand. (Document No. 381). Defendants have countered with a lengthy response containing counter accusations of improper discovery requests and other unprofessional behavior by plaintiffs' counsel. (Document No. 386). Plaintiffs predictably filed a Reply Brief to defendants' Response (Document No. 402).

Discovery disputes have continuously arisen in this case. On the basis of an examination of matters on file, the court is concerned that counsel or parties on one or both sides may be taking positions that do not comply with either the letter or the spirit of the Federal Rules of Civil Procedure and the Local Rules of Court regarding discovery. An excessive discovery demand, knowingly made, violates Rule 11 and Rule 26(g). An inadequate response to a reasonable discovery demand, knowingly made, violates Rule 11, Rule 26(g) and other rules as well. For example:

(a) Fed.R.Civ.P. 33(a) requires that a party "furnish such information as is available to the party." That one may object to interrogatories as being excessively bur-

densome is not an excuse for responding with nothing but objections or a motion for a protective order. Counsel must promptly furnish such information responsive to the interrogatories as is available through reasonable efforts. Failure to do so is regarded as sufficient ground for imposition of sanctions in this court.

■■■ (b) Fed.R.Civ.P. 34(b) provides that if a ground of objection goes only "to part of an item or category" of documents demanded, "the part shall be specified." It is implicit, if not explicit, that production or allowance of inspection "will be permitted as requested" except as to the part or parts to which stated objections apply. Thus, the fact that a demand for production is objectionable in part is not an excuse for producing nothing. Failure to produce documents or parts of documents to which no objection applies is regarded as sufficient ground for imposition of sanctions.

■■■ (c) Fed.R.Civ.P. 36(a) provides that "when good faith requires that a party ... deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder." Thus, an objection that goes only to some part or parts of requests for admission is not an excuse for failure to respond to all other parts to which the ground of objection is not applicable. Failure to respond with such admissions is regarded as sufficient ground for imposition of sanctions in this court.

■■■ (d) Fed.R.Civ.P. 26(g) provides that a represented party's attorney must sign each discovery request, response or objection. The signature constitutes a certification that to the best of the attorney's knowledge, information and belief formed after a reasonable inquiry, the discovery request, response or objection is: "(1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive...." Certifica-
tion in violation of Rule 26(g) is sufficient ground for imposition of sanctions.

(e) Fed.R.Civ.P. 37(b)(2) provides that if a party "fails to obey an order to provide or permit discovery ... or if a party fails to obey an order entered under Rule 26(f), the court ... may make such orders ... as are just, [including] the following: (A) an order that the matters in dispute "shall be taken to be established ...;" (B) an order prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters into evidence; (C) striking out pleadings in whole or in part, or rendering a default judgment against the disobedient party; (D) an order finding the disobedient party in contempt of court; and in addition or in lieu of any of the alternatives, the court "shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure...."

■■■ The court will not serve, or acquiesce in a Magistrate Judge's serving, as a referee for settlement of disputes over discovery in which each party takes unreasonable positions. If counsel or a party makes excessive demands or insufficient responses after this cautionary order by the court, an order may be entered providing for more stringent controls over discovery, including the following:

■ (1) Having determined that both sides have been unreasonable, the court may impose an appropriate sanction, pursuant to Fed.R.Civ.P. 26(g) and 37. An appropriate sanction in this case may include an order in which the court declines to undertake the burdensome task of working out some compromise position that is a reasonable accommodation within the range counsel should have agreed upon; the court may instead determine only which side has been *more* unreasonable and, as a sanction for misconduct, enter an order that discovery proceed in accordance with the more reasonable position.

(2) The court may award attorney's fees against a party, or against counsel, or both.

(3) The court may order that no client be charged for any of the time or expenses counsel on either side spent on the discovery dispute in which counsel on both sides were taking unreasonable positions.

(4) Inasmuch as it is frequently difficult to assess reasonable attorney's fees for violation of discovery rules without extensive satellite litigation and preparation of time consuming findings of fact, this court finds that an appropriate sanction includes imposition of escalating fixed fee fines. The court therefore may fine counsel or a party for the first violation of the order in an amount not to exceed $1,000, payable to the Clerk of Court; the amount of the fine will double for each successive violation thereafter by the same party or attorney.

## G. WARNING TO ALL COUNSEL AND PARTIES

▮ On November 25, 1987, the first of the four members of this Court who have labored over this case ordered (as part of an order converting a motion to dismiss to a motion for summary judgment under the Federal Rules of Civil Procedure) the following:

> IT IS FURTHER ORDERED that counsel for plaintiff shall refrain from superfluous language set forth in his pleadings and memorandums of record. For example, in response to defendants' twelve-page brief in support of their motion to dismiss plaintiff's seventy-two-page Third Amended Complaint, plaintiff filed a fifty-seven page response and a seventeen-page amendment thereto. Such unnecessary verbiage burdens the court and defendants, who must respond to the issues which are often obscured by irrelevant musings and indulgent attacks upon counsel for defendants.

(Document No. 113).

Plaintiffs' "unnecessary verbiage" and "superfluous language" must have been contagious, because, as this Court stated in its opinion of October 23, 1990, what followed was "a three-year avalanche of paper in the form of motions, responses, replies, countermotions, etc., which has transformed this action to a state of total disarray." 758 F.Supp. at 316. That avalanche was not all plaintiffs' doing, and defendants and their counsel share the responsibility for the condition of this record.

Chaos threatens again. In addition to plaintiffs' voluminous motion for Rule 37 sanctions, new counsel for the remaining defendants seems to have "caught the fever." New counsel's willingness to join the fray is evidenced by recent filings such as "Defendants' Motion to Certify Issue for Appeal and to Stay Proceedings or for Alternative Relief," which was new counsel's second attempt to relitigate an "issue" that had already been decided adversely to these defendants in October of 1990, despite defendants' contention that issue had "fallen through the cracks." The first attempt to relitigate the issue (Document No. 326) was denied in December 1992.

▮ This avalanche must now be contained. The parties and their attorneys are hereby placed on notice that this Court *will not hesitate* to exercise its authority under the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the district courts to correct abuses of the judicial process, *Chambers v. Nasco, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), to impose appropriate sanctions upon attorneys and litigants who violate the letter and the spirit of our rules of orderly procedure and professional conduct. Where the record discloses good grounds for sanctions and the violator has been forewarned, this Court may impose such sanctions *sua sponte*, without further notice.

## H. DEFENDANTS' MOTIONS IN LIMINE

Defendants have filed ten motions in limine. (Document No. 370). This Opinion and Order will dispose of two of the motions in limine supported by separate memoranda (Document Nos. 379, 380). Defendants' ninth motion in limine is in part a disguised motion to relitigate the "securities" issue and dismiss the securities fraud claim on the grounds that defendants sold 100% of their interests in the gas wells/leases to plaintiff, and therefore, there was no sale of "securities." Alternatively, this motion in limine

requests this Court exclude all evidence concerning an alleged violation of Section 10(b) of the Securities Act of 1934. This motion in limine (Document No. 370, Part 9) will be denied.

Defendants' tenth motion is a "Motion in Limine Regarding Statute of Limitations Bar." (Document No. 370, Part 10). Having previously decided this issue adversely to defendants and having previously declined to reconsider such a dispositive motion, this Court will not again revisit the statute of limitations issue, and will deny defendants' request to "disallow any testimony concerning defendant's alleged violation of Section 10(b) and make a legal determination that the Section 10(b) claim should be dismissed," without prejudice to defendant's right to contest the statute of limitations issue at trial. Counsel is instructed not to make any further attempts to relitigate this issue prior to trial on the merits.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 30th day of April, 1993, it is hereby ORDERED AND DIRECTED AS FOLLOWS:

1. The Motion by dismissed defendants, Roberta Ann Brown, Tracey Lynn Brown Miller, Terri Beth Brown Zinchini, Lori Brown Shumaker, Linda Brown and Julie Brown, Document No. 273, for Rule 11 Sanctions is DENIED with regard to Roberta Ann Brown, and GRANTED with regard to these other five dismissed defendants. Attorneys Rodgers and Cullis are ORDERED to pay $1,000 to the Clerk of Court on or before May 31, 1993; Attorneys Rodgers and Cullis are further ORDERED to attend a seminar on Rule 11 Sanctions in the federal courts given by an organization that has been certified by the Continuing Legal Education Board of the Supreme Court of Pennsylvania as a qualified provider of continuing legal education on or before August 31, 1993, and to file proof thereof with this Court on or before September 15, 1993;

2. The Motion by dismissed defendant, C. Doyle Steele, for Rule 11 Sanctions (Document No. 281) is held in abeyance pending filing of additional supporting materials;

3. The Motion by dismissed defendant, Adobe Resources Corporation for Rule 11 Sanctions (Document No. 241) and Supplemental Motion for Rule 11 Sanctions (Document No. 292) are DENIED;

4. The Motion by dismissed defendant, Lloyd DeVos from Rule 11 Sanctions (Document No. 284) is DENIED;

5. The Motion by remaining defendants, Harold Ed Brown and the Kyle Energy companies to Certify an Issue for Appeal and to Stay Proceedings Pending Appeal or for Alternative Relief (Document No. 345) is DENIED;

6. The Motion of remaining defendants to file memorandum (Document No. 361) is GRANTED;

7. Defendants' Motion in Limine regarding lack of security (Document No. 370, Part 9) is DENIED;

8. Defendants' Motion in Limine regarding statute of limitations bar (Document No. 370, Part 10) is DENIED;

9. Plaintiffs' Motion for Sanctions Pursuant to Fed.R.Civ.P. 37 (Document No. 381, Part 1) is continued under advisement, subject to the parties' and attorneys' compliance with discovery directives set forth in the Opinion accompanying this Order;

10. Plaintiffs' Motion for leave to expand upon the pagination limits of briefs (Document No. 381, Part 2) is DENIED.