**Joseph BROCCARDO and International Union, United Mine Workers of America, Plaintiffs–Appellants,**

**v.**

**FREEMAN UNITED COAL MINING COMPANY and United Mine Workers Retirement Plan, for UMWA Represented Employees of Freeman United Coal Mining Company, Defendants–Appellees.**

**No. 03–3258.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 2004.

Decided June 24, 2004.

Douglas L. Parker, Mooney, Green, Baker, & Saindon, Washington, DC, for Plaintiffs–Appellants.

Craig C. Martin, Jenner & Block, Chicago, IL, for Defendants–Appellees.

Before BAUER, MANION, and EVANS, Circuit Judges.

## ORDER

Former miner Joseph Broccardo was denied supplemental pension benefits from Freeman United Coal Mining Company. ("Freeman"). Broccardo and his union, the United Mine Workers of America ("Union"), then sued Freeman alleging that the denial of benefits violated Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *et. seq.* ("LMRA") and Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* The district court granted Freeman's motion for summary judgment regarding the LMRA counts, finding that Broccardo was not employed at Freeman long enough to qualify for supplemental benefits under the terms of Freeman's benefits plan. In addition, the district court granted Freeman's motion for summary judgment regarding Broccardo's ERISA claim because of its holding that Broccardo was not entitled to benefits pursuant to Freeman's

benefits plan. For the following reasons, we affirm.

## I.

Joseph Broccardo had a long career in the coal industry. His tenure with Freeman, however, was a relatively short part of that career. Broccardo started work for Freeman on June 1, 1971, but was laid off on November 23, 1971. He then continuously worked for Peabody Coal for about 23 years, from 1971 until Peabody laid him off in 1994. On April 20, 1999, after a layoff from Freeman of nearly 28 years, Freeman called Broccardo back to work by offering him a job.

Broccardo met with Union officials concerning Freeman's offer and was informed by the Union and by Freeman's employee relations manager that, under a recently agreed-upon collective bargaining agreement, if he accepted the job offer he would not be eligible for supplemental pension benefits unless he worked at Freeman for three years. The fact that his total service with Freeman (that accumulated in 1971) amounted to approximately five months meant that until he worked there 31 more months, he was ineligible for supplemental benefits. According to Freeman, Broccardo accepted the job offer because he intended to work at Freeman for at least three years before retirement.

Unfortunately, 20 months after beginning his second tenure at Freeman, Broccardo was involved in an accident at work when part of the mine roof fell on him. For a time he was able to continue working after the accident, but was eventually forced to retire in December of 2000 due to injuries suffered in the accident. At the time Broccardo retired, he had only 26 months of total employment with Freeman.

Although Broccardo was short of the three years' service required for supple-

mental pension benefits, he nevertheless applied for these benefits when he retired. Freeman denied benefits, citing benefit plan language. The plan required that even if a miner was qualified with 20 years' service in the industry, if the most recent employment was with another company (for Broccardo, it was Peabody), he would have to accumulate a total of three years with Freeman before becoming eligible for the supplemental benefits. It is undisputed that Broccardo had twenty years' service; that he had previous unionized employment with Peabody, a separate employer from Freeman; and that he did not work three years for Freeman after leaving Peabody.

Turning to the documents at issue, Freeman and the Union were parties to the National Bituminous Coal Wage Agreement ("1993 Agreement"), a national collective bargaining agreement signed in 1993. Before the 1993 Agreement expired in 1998, Freeman informed the Union that it would consent only to parts of the successor agreement. Freeman wanted to enter into a separate agreement regarding retiree health care benefits, among other items. This separate agreement involved re-registration of Freeman's "panel list," which contained the names of former employees, such as Broccardo, who were laid off from jobs at Freeman but who were eligible to be recalled back to work at Freeman. After negotiations, the parties agreed to a new benefits proposal documented in a Memorandum of Understanding ("MOA") dated December 19, 1998. The MOA kept the 1993 Agreement as the base labor agreement, but modified the 1993 Agreement by the terms of the MOA, including attachments to the MOA.

Two attachments to the MOA are relevant to this appeal. Attachment A requires that Freeman establish a pension

plan to provide benefits to current and future retirees as described in the attachment and gives Freeman the discretion to create and amend the pension plan, as long as any amendments do not diminish the benefits described in Attachment A. Attachment B establishes a new procedure for re-registering Freeman's panel list. The parties incorporated the MOA and its attachments into the new agreement, referred to as the "Freeman Agreement."

The Freeman Agreement was then executed and ratified by the Union membership and became effective December 19, 1998. But, as contemplated by the Freeman Agreement, negotiations concerning other issues were to continue beyond that date. Among the other issues was the drafting of the "Plan" which was described in the Freeman Agreement and provided for supplemental benefits of over $500 per month to eligible employees with the required service at Freeman. On August 17, 1999, a Freeman attorney sent a Union attorney a draft of the Plan for the Union to review and ask questions, object, or propose changes. The draft Plan contains the critical language at issue in this appeal: the requirement that individuals who last worked in the coal industry for a unionized employer other than Freeman must work for Freeman for three years before their other coal-industry service could be counted toward eligibility for supplemental pension benefits from the Plan.

In September 1999, Freeman's attorney contacted the Union attorney to ask whether she had any questions or concerns about the draft Plan's terms. The Union attorney responded but did not express any objections to the draft Plan. In early 2000, Freeman's attorney again contacted the Union attorney and informed her that

unless the Union objected to any of the provisions in the draft Plan, the draft Plan would become final. The Union attorney did not raise any objections to the draft Plan, nor did she object to the Plan becoming final. Accordingly, the Plan became final and effective retroactively, as of December 19, 1998, the date the Union membership ratified the 1998 Freeman Agreement.

Because Broccardo's injury forced him to retire several months before he met the three-year tenure requirement, Freeman denied supplemental pension benefits. Broccardo then filed this action. After discovery, the district court granted Freeman's motion for summary judgment, holding that the Plan and the Freeman Agreement should be read together as a single contract for benefits and that the plain language of the contract did not provide supplemental pension benefits to Broccardo. As for the ERISA claim, the court held that even under de novo review, the Plan Administrator properly denied supplemental benefits to Broccardo because he was ineligible under the terms of the Plan. Broccardo appeals.

## II.

■ We review the district court's grant of summary judgment de novo. *See Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir.1997). The pertinent contractual documents at issue consist of the Freeman Agreement and the Plan.[1] When a collective bargaining agreement (such as the Freeman Agreement) provides for employment benefits through the creation of an ERISA Plan, both the collective bargaining agreement and the ERISA Plan documents are read together

---

1. Freeman acknowledges that Broccardo is currently a beneficiary of the Plan and is entitled to age 65 pension benefits. This appeal resolves only whether Broccardo is entitled to additional supplemental pension benefits.

as part of the same contract, with normal rules of contract interpretation applied. *See Sprague v. Central States, SE and SW Airlines Pension Fund,* 269 F.3d 811, 816–17 (7th Cir.2001); *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 567 (7th Cir.1995). The Freeman Agreement refers to the supplemental pension benefits sought by Broccardo as an early retirement benefit. The Freeman Agreement also grants discretion to Freeman to draft the ERISA Plan, including the provision concerning the supplemental pension benefits.[2]

█ It is undisputed that Broccardo was not actively employed by Freeman on the effective date of the Plan, December 19, 1998. For this reason, Section 1.4 of the Plan requires Broccardo to complete three years of active work with Freeman before getting credit for the twenty plus years he worked with Peabody for purposes of receiving supplemental pension benefits from Freeman.[3] Again, Broccardo's total service with Freeman amounted to only twenty-six months. Accordingly, Broccardo is not entitled to Plan benefits and thus Freeman did not breach the collective bargaining agreement. His LMRA claims fail as a matter of law. *See Cleveland v. Porca Co.,* 38 F.3d 289, 297 (7th Cir.1994) (holding that a Section 301 claim requires proof that the employer breached the collective bargaining agreement).

The plaintiffs rely on Section D of Article XX–C of the Freeman Agreement, which allows two exceptions of sorts to the three year requirement. The exceptions, however, apply only to employees who were 1) actively employed by Freeman as of the effective date of the Freeman Agreement or 2) who were laid off by Freeman; had twenty years' service at the time of the layoff; and had Freeman as their last unionized employer as of the effective date. Of course, Broccardo does not qualify for either exception because he did not start his second tenure with Freeman until 1999 and because of his intervening employment with Peabody.

█ The plaintiffs also argue that the Freeman Agreement is dispositive and that the Plan should not be considered because the interpretive rules in the Agreement state that it trumps the Plan language when there is any discrepancy. Assuming there is a discrepancy, it was not specifically pointed out to the district court and the argument is thus waived. Regardless, the plaintiffs do not identify any interpretive rules in the Freeman Agreement. When a collective bargaining agreement does not contain a specific rule of interpretation, the court is certainly free

**2.** The Plaintiffs argue that Freeman exceeded its discretion in drafting the Plan, despite the broad discretion granted Freeman, because the Freeman Agreement prohibited diminishing the pension benefit in the Plan. Freeman maintains that the three year requirement did not diminish in the pension benefit, i.e., lower the monetary amounts negotiated. *Cf. Moriarty v. Svec,* 164 F.3d 323, 330 (7th Cir.1998) (applying ordinary and popular meanings of terms found in collective bargaining agreements). We need not resolve this dispute because the Plan was presented to the Union's attorney who had a full and fair opportunity to review it and raise any objections. No objections were raised and the Plan was finalized. The Union's acquiescence to the Plan language and acceptance of the Plan benefits on behalf its members constitutes a waiver of any right to argue at this late date that Freeman exceeded its discretion in drafting the Plan. *See Saverslak v. Davis–Cleaver Produce Co.,* 606 F.2d 208, 214 (7th Cir.1979).

**3.** It is apparently undisputed that Broccardo left work at Freeman due to injuries sustained on the job. Thus it is arguable that he qualifies for supplemental pension benefits due to a total and permanent disability pursuant to § 1.4(b) of the Plan. We do not consider this argument, however, because it was not raised on appeal.

to apply the standard modes of interpretation. *See, e.g., International Truck and Engine Corp. v. United States Steel Workers of America*, 294 F.3d 860, 862–63 (7th Cir.2002). As stated, consistent with precedent, we read together the Freeman Agreement and the Plan because the documents were negotiated together and were negotiated pursuant to the same consideration. *See Sprague*, 269 F.3d at 816.

As for the claim of wrongful denial of benefits under ERISA, Broccardo must first establish that he is entitled to the benefits "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Anderson v. Operative Plasterers' and Cement Masons' Int'l Assoc. Local No. 12 Pension and Welfare Plans*, 991 F.2d 356, 357 (7th Cir.1993). Our holding that the Plan as written does not entitle Broccardo to the benefits necessarily forecloses the ERISA claim.

### III.

Pursuant to the Freeman Agreement and the Plan, Broccardo is not entitled to supplemental pension benefits at age 55. The Freeman Agreement granted Freeman discretion to draft the Plan. The plain language of the Plan, to which the Union consented, precludes Broccardo from benefits because he failed to complete three years of work at Freeman. Due to the fact that Broccardo is not entitled to benefits under the Plan, the district court correctly dismissed his ERISA claim as well. Accordingly, the judgment of the district court is hereby AFFIRMED.