**CHAMBERLAIN MANUFACTURING COMPANY, Plaintiff**

v.

**LOCAL LODGE NO. 847 of the International Association of Machinists and Aerospace Workers, Defendant.**

**No. 3:06cv364.**

United States District Court, M.D. Pennsylvania.

Feb. 13, 2007.

---

John P. McLaughlin, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Plaintiff.

Robert D. Mariani, Scranton, PA, for Defendant.

### MEMORANDUM

MUNLEY, District Judge.

Before the court are plaintiff's motion for summary judgment (Doc. 20), defendant's motion for summary judgment (Doc. 13), and defendant's motion for attorney's fees (Doc. 19). Having been fully briefed and argued before the court, the matters are now ripe for disposition.

## I. Case Background

At dispute in this case is arbitrator Walter DeTreux's decision of January 19, 2006, determining that plaintiff Chamberlain Manufacturing Company (hereinafter "Chamberlain" or "The Company") had violated its collective bargaining agreement with Local Lodge No. 847 of the International Association of Machinists and Aerospace Workers (hereinafter "The Union") by improperly testing workers whose injuries on the job were not the result of accidents. The Chamberlain plant manufactures steel into artillery shells for use by the United States military. Chamberlain filed suit in February 2006 (Doc. 1), seeking to vacate Arbitrator DeTreux's decision under Section 195 of the Labor Management Relations Act. *See* 29 U.S.C. § 185(a) (establishing that "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affects commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

The policy in question in pertinent part establishes:

5. Drug and Alcohol Screening:

(a) Drug and/or alcohol testing will be required upon reasonable suspicion of use as defined below and without prior notice, or if the employee is involved in a safety hazard or accident while at work. *(See* Collective Bargaining Agreement, attached as Exhibit B to Complaint (Doc. 1) at 83).

This policy was the result of negotiations for a contract that took effect in November 2004. The negotiations revealed that the Company sought a much stricter policy than the Union would agree to. The fore-

going policy, the meaning of which the parties disputed in their grievance, resulted.

After the agreement went into effect, Chamberlain began to test every employee who reported an injury that required outside medical attention. The Union filed a grievance, pointing to 19 cases where an employee suffered an injury not caused by accident or a safety hazard, and arguing that under the policy these employees should not have been tested. The company argued that its testing met the language of the policy and the parties' discussions during contract negotiations.

This disagreement went before an arbitrator, as required by Article 24 of the contract between the parties. *(See* CBA, Art. 24 at 30–32). Under this article, a grievance that cannot be resolved by the parties on the company level is submitted to an arbitrator with the Philadelphia Office of the American Arbitration Association. *(Id.* at 32). The arbitrator was selected according to the Labor Arbitration Rules of the American Arbitration Association, and the arbitrator held a hearing. *(Id.).* Article 24 states that "The arbitrator shall decide any question of arbitrability. The arbitrator's award shall be final and binding upon the Company and Union, as well as upon the Grievant(s). The arbitrator shall have no authority or jurisdiction to add to, modify, alter or nullify any provision of the Collective Bargaining Agreement." *(Id.).*

The arbitrator addressed the following question: "Did the Employer violate Section 5(a) of the Drug and Alcohol Policy when it referred for testing all employees who reported an injury requiring outside medical attention? If so, what is the remedy?" (IAMAW Local Lodge No. 847 and Chamberlain Mfg. Corp., American Arbitration Case No. 14 300 611 05, January 19, 2006 (Hereinafter "Arbitration Decision") Attached as Exhbt. A. to complt.,

at 3). In his decision, the arbitrator noted that both sides discussed the negotiations that led to the policy, though they disagreed about the position that the other side took during those discussions. *(Id.* at 1, 3). The arbitrator determined that those discussions might be useful in interpreting the parties' intent, but determined that "I am required first to examine the language of the contract and, in this case, the language of the proposals." *(Id.).*

The arbitrator pointed out that neither "accident" or "safety hazard," was defined in the collective bargaining agreement, and determined that the dispute between the parties concerned the meaning of "accident." *(Id.).* The employer had argued that it could test because the term "accident" covered every injury in the workplace, and because the parties had used "injury" and "accident" interchangeably in their negotiations. *(Id.).* The only restriction was that the injury had to require outside medical attention. *(Id.).* The Union contended that injuries could occur without an accident, and therefore testing was limited to those incidents where an employee suffered an injury from an accident. *(Id.* at 3–4).

The arbitrator found that the contract did not support the employer's claim that it could drug test employees for any reported injury requiring outside medical attention. *(Id.* at 4). He reasoned that if the parties had wanted to include the limitation of requiring outside medical attention, they would have included the phrase in the contract. *(Id.* at 4–5). A similar lack of a specific statement also undermined a company argument that it had a right to test any worker who suffered an injury that required an OSHA report. *(Id.* at 5).

The arbitrator also rejected the Company's position that "accident" and "injury" were interchangeable and permitted test-

ing of any injured worker. (*Id.* at 6). The arbitrator noted that the employer's argument was weakened by the fact that it did not send all injured workers for testing, though its argument would seem to allow it. (*Id.*). The arbitrator also concluded that "the plain meaning of accident does not include injury." (*Id.*). The arbitrator looked to a dictionary definition, as well as a thesaurus, and concluded that one could have an injury without having an accident. (*Id.*). The arbitrator also looked to Pennsylvania law, finding that courts have concluded that an injury could occur without an accident in the workers' compensation context. (*Id.* at 7). In addition, the company had passed on contractual language offered by the union that would have supported the employer's interpretation of the present contract. (*Id.*). The union had proposed that testing be given to any employee who suffered an "accident or other incident" at work that led to an injury. (*Id.*). Since the company rejected language that would have included all injured workers, Chamberlain could not later obtain such language. (*Id.*).

Accordingly, the arbitrator found that the Company did not have a right to test the 19 employees who had submitted evidence that they had injuries which resulted from daily trauma or aggravation of a previous injury. (*Id.* at 8). He determined that "the Employer violated Section 5(a) of the Drug and Alcohol policy when it tested employees whose injuries were not attributable to accidents." (*Id.*). The arbitrator therefore sustained the grievance. (*Id.*). As a remedy, he ordered the employer "to cease and desist from drug and alcohol testing employees who suffer injuries that occur in the normal course of their job performance and are not the result of an accident or safety hazard." (*Id.*).

## II. Jurisdiction

This suit arises under 29 U.S.C. § 185(a). We therefore have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.").

## III. Motions for Summary Judgment

Both sides have filed motions for summary judgment. We will address their arguments together.

### A. Legal Standard for Summary Judgment

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing FED.R.CIV.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986). A fact is material when it might affect the outcome of the suit under the governing law.

*Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

### B. Legal Standard for Overturning Arbitration Decisions

▮ Courts are extremely reluctant to disturb arbitration awards, since arbitration results from a contractual arrangement between a union and employee to have their rights under the collective bargaining agreement determined by an impartial evaluator. American labor law evinces "a decided preference for private settlement of labor disputes without the intervention of the government." *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Accordingly, "because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.* at 37–38, 108 S.Ct. 364. "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Therefore, courts' ability to interfere with the decisions of an arbitrator is extremely limited: "[i]t is the arbitrator's construc-tion which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from him." *Id.* at 599, 80 S.Ct. 1358. In other words: "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id.* at 596, 80 S.Ct. 1358.

▮ The key question is thus whether the decision "draws its essence" from the collective bargaining agreement. A decision does so "if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties intention; only where there is manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). A court cannot overturn an arbitrator's decision simply because the court disagrees with the interpretation: "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, fact-finding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Assn. v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001); *Int'l Truck and Engine Corp. v. United Steel Workers of America, Local 3740,* 294 F.3d 860, 861 (7th Cir.2002) (holding that "as long as the arbitrator was interpreting the parties' contract rather than basing decision on 'some body of thought, or feeling,

or policy, or law that is outside the contract [citation omitted], the award must stand even if the arbitrator's interpretation was actually a misinterpretation.").

■ Courts also accord an arbitrator deference in determining the issues raised in arbitration: "[t]here is no doubt that our review of the interpretation of a submission is highly deferential." *Matteson v. Ryder System, Inc.*, 99 F.3d 108, 113 (3d Cir.1996). The arbitrator, however, only has discretion to decide the issues submitted to it by the parties. *Id.* Further, "the touchstone for interpreting a submission must be the intention of the parties." *Id.* at 114.

■ Like other contracts, a court may overturn an arbitrator's decision that is contrary to public policy. *See Misco*, 484 U.S. at 42, 108 S.Ct. 364 (holding that "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in common law, that a court may refuse to enforce contracts that violate law or public policy."). That policy must, however, be "well defined and dominant." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). Public policy concerns cannot be expressed as general statements of public interest, but must be able to "be ascertained from law and legal precedent." *Stroehmann Bakeries, Inc. v. Local 776, Int'l Brotherhood of Teamsters*, 969 F.2d 1436, 1441 (3d Cir.1992).

## C. Discussion

■ Defendant argues that the arbitrator's decision "draws its essence" from the collective bargaining agreement between the parties, and that we should therefore uphold the decision and grant defendant summary judgment. The arbitrator's decision interpreted a contractual provision,

the meaning of "accident," and the arbitrator did not stray outside the bounds of the contract to enforce his own sense of industrial justice. Plaintiff counters that the arbitrator's decision improperly failed to consider evidence presented at the arbitration, improperly extended the employer's obligations under the contract, and violated public policy.

We agree with the defendant that the arbitrator's decision "draws its essence" from the collective bargaining agreement. On those grounds, the decision should be upheld. The arbitrator was asked to define "accident" as it related to the drug and alcohol policy in place at the plant, a term undefined and ambiguous in the contract. The arbitrator engaged in a normal process of contract interpretation, a role courts are bound to respect. *See, e.g. News America Publications, Inc. v. Newark Typographical Union*, 918 F.2d 21 (3d Cir.1990) (holding that "[a]s long as the arbitrator *arguably* construed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that the arbitrator committed a serious error."). Once the arbitrator concluded that "accident" was an ambiguous term in the contract, he used extrinsic sources to interpret the term. He used a dictionary and thesaurus to find common meanings of the term question. He questioned union members and company officials about their intention in establishing the policy. The arbitrator eventually came to the conclusion that the term "accident" meant that not all injuries that required treatment outside the plant were covered by the testing policy. He therefore issued an arbitration award in favor of the union. The arbitrator was employed by the parties to the collective bargaining agreement to resolve disputes about the meaning of the contract, and the arbitrator did just that here. In that sense, plaintiff seems merely to be asking for judicial review of the arbitrator's interpretation of the con-

tract, a role we are not allowed to assume. *See Major League Umpires Assn. v. American League of Professional Baseball Clubs*, 357 F.3d 272, 289 (3d Cir.2004) (rejecting a request to overturn an arbitration award because "at their core, many of the claims raised by both sides in this litigation amount to little more than requests for judicial review of the merits of the Award.").

■ We offer no opinion as to whether the arbitrator was correct in interpreting the contractual term, because we are not required to do so. A court need only determine that the arbitrator's decision "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold*, 405 F.2d at 1128. There is nothing irrational about the interpretation the arbitrator gave the contract. A rational interpretation of the contract would focus on the meaning of "accident," which was left undefined in the contract, and attempt to discern how that term limited which workers could be tested for drugs and alcohol. The arbitrator's decision in this case focused squarely on that issue and offered a plausible explanation for the limits applied to the testing. Even if we are to credit the company's claims that the company hoped to engage in broader testing during the negotiations, we do not see how the arbitrator's conclusion that the company failed to achieve that aim in the final contract arrived by the parties is so deficient as to be irrational.

The plaintiff argues that we should overturn the decision because the arbitrator ignored evidence in front of him that indicated the parties intended to be bound by a broader testing regime than the one he found that the contract established.

Chamberlain cites to *Citgo Asphalt Refining Co. v. Paper, Allied–Industrial, Chemical and Energy Workers Int'l Union, Local No. 2–991*, 385 F.3d 809 (3d Cir.2004) to argue that the arbitrator was required to consider evidence of the negotiations between the parties in determining the meaning of the contract. In the *Citgo* case, the court overturned an arbitrator's decision that a policy that established zero tolerance for employees who failed a drug screening program was "unreasonable" and therefore not contemplated by the contract. *Id.* at 814–15. The court found that the arbitrator had not considered testimony on the matter or the language of the contract, but had instead based his decision on policies established by Citgo's competitors and his own sense of what was reasonable under the circumstances. *Id.* at 818. We do not think that this case presents similar facts: here, the arbitrator did not ignore the evidence presented by the company and did not substitute his own sense of when testing was appropriate for the contract terms agreed to by the parties. His decision explicitly mentions the position the company took in negotiations, but does not credit that position as controlling over the meaning of the contract.[1] The arbitrator also did not substitute standards agreed to by other firms in the industry for those contracted for by the parties.

We accordingly do not find that the arbitrator ignored the evidence presented to him of the negotiations between the parties and their understandings of the agreement. His decision acknowledged the company's representations about the course of contract negotiations, and apparently found that they did not require a different interpretation of the contract terms. The arbitrator thus examined the

---

1. Again, any disagreement with this position on the usefulness of outside evidence for understanding the contract is a matter of contract interpretation and this court is not tasked with evaluating the arbitrator's interpretation of the contract.

record of the negotiations and found that they did not support the plaintiff's argument. Whether we agree or not with this interpretation of the contract, the fact that the arbitrator examined the record is sufficient to uphold the award. *See News America Publications, Inc. Daily Racing Form Division v. Newark Typographical Union*, 918 F.2d 21, 22 (3d Cir.1990) (holding that "there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of the award.").

■ The plaintiff also argues that the arbitrator added to the company's obligations under the contract by requiring that the company first ascertain the cause of an injury before testing a worker. We agree that if an arbitrator changes the terms of a contract rather than interprets it, a court may overturn the arbitrator's decision. *See Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, Local 1445*, 314 F.3d 29, 35 (1st Cir.2002) (finding that an arbitrator "impermissibly substituted his own notions of industrial justice over those established in the contract" when he reinstated a worker fired for insubordination because "mitigating circumstances" existed, even though the contract did not require the consideration of such circumstances); *Anheuser–Busch, Inc. v. Local Union No. 744, Int'l Brotherhood of Teamsters*, 280 F.3d 1133, 1142 (7th Cir.2002) (overturning an arbitrator's for overstepping the bounds of his authority because "the arbitrator himself admitted when he stated that the employer's decision to adhere to the contract as negotiated and written, rather than its past practice, was a 'fundamentally unfair maneuver,' making clear that the decision, in spite of the arbitrator's sleight of hand, dispensed the arbitrator's own brand of industrial justice."). We do not find that to be the case here, however. The arbitrator simply concluded that testing could occur in more limited circum-

stances than Chamberlain thought, and the company's argument that this decision adds responsibilities under the contract and allows the arbitrator to advance his own brand of industrial justice is unavailing.

Indeed, the company appears to be restating its argument for interpretation of the "accident" clause in a new context. In the original grievance, the company and the union disagreed about the company's testing obligations under the contract: the company said it could test whenever a worker went off-site for treatment of an injury, and the union claimed the company first had to determine whether the worker's injury was a result of an accident. The arbitrator adopted the union's position. Now, the company appears to urge us to adopt its rejected position by determining that the arbitrator inappropriately added obligations under the contract. Since the parties bargained to have an arbitrator determine their obligations under the contract, we will not replace ourselves for the arbitrator, whatever argument the company uses to try and convince us to do so. This case is not like *Pennsylvania Power Co. v. Int'l Brotherhood of Electrical Workers Local No. 272*, where the court determined that an arbitrator had exceeded his authority by determining that the contract required that "production and maintenance employees shall have the same benefits as the supervisory employees." *Pennsylvania Power Co.*, 276 F.3d 174, 179 (3d Cir.2001). The agreement, however, had excluded supervisory employees from coverage, and the arbitrator improperly added a party to the agreement. *Id.* The arbitrator did nothing of the sort here; he simply interpreted a contract term to conclude that Chamberlain could not drug or alcohol test employees unless they had been injured by an accident. Such action is not grounds for overturning an arbitrator's decision.

We also reject plaintiff's position that the arbitrator exceeded his authority in determining that the company had improperly tested the 19 workers whose cases were used as evidence in the grievance hearing. While we agree with the plaintiff that the propriety of that testing was not placed directly before the arbitrator, we find that the arbitrator reasonably concluded, based on the case before him, that he had been asked to make a decision about whether those workers should have been tested.[2] Indeed, we fail to see how the arbitrator could have made his decision without information about which workers had been tested for drugs and alcohol, and under what conditions. In that sense, the cases of those nineteen workers were before the arbitrator, and a decision about the propriety of the company's testing of those workers appears an inevitable outcome of the case. This case is not like *Matteson v. Ryder System, Inc.*, 99 F.3d 108, 115 (3d Cir.1996), where the court concluded that an arbitrator had determined an issue not raised by the parties when he had been asked to determine whether the company's system for reimbursing drivers for the cost of tolls but also determined that company had underpaid drivers as a portion of gross revenues.

In that case, the only issue discussed before the arbitrator was the toll schedule. *Id.* at 114. Here, the parties clearly discussed the testing performed on the nineteen workers in question; indeed, their cases formed part of the evidentiary basis for the arbitration decision.

We likewise reject the company's argument that the arbitrator's award violates public policy. While we will not enforce a contract that violates public policy, that policy "must be 'explicit', 'well defined,' and 'dominant.'" *E. Associated Coal Corp. v. United Mine Workers of America, Dist. 17,* 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). The existence of such policy "is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. 2177 (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1945)). We agree that the Drug Free Workplace Act, _____, requires the employer to undertake programs to keep drugs and alcohol out of the workplace. There is, however, no requirement in the act for testing of workers among the specific measures the act mandates.[3] The

2. We note, as well, that the arbitrator's ruling did not impose any penalty on the company for improperly testing these workers. The arbitrator did not order any disciplinary action to be reversed, nor did he order the company to pay any fine for its improper action. The arbitrator simply noted that the company's testing of these workers was improper and included that finding in his award. In short, the company incurred no liability from that portion of the decision. Even if we agreed that this question was not before the arbitrator, we fail to see how concluding that the decision in that case was improper would lead to any substantive action on our part.

3. The general, and therefore unavailing, nature of Chamberlain's public policy contention that it is required to test as part of the government's desire that drugs be kept out of the workplace is highlighted by the company's argument here. According to the company's logic, federal law requires Chamberlain to engage in a testing program to achieve the government's goal that no drugs or alcohol appear in the workplace. Chamberlain's own policy, however, would not achieve this goal, since we can assume that drug use at the factory, if there is any, is not confined to people who are injured severely enough to require off-site treatment or who are involved in a workplace accident. If public policy would only be served by a program that elimi-

plaintiff cites to no cases which establish that a company must undertake drug testing in order to be in compliance with the law. Therefore, an order which merely limits the circumstances under which an employer can require drug testing of an employee does not violate any "explicit," "well defined" or "dominant" public policy, and we will not overturn the award on public policy grounds.[4]

## IV. Defendant's Motion for Attorney's Fees

The Defendant moves for an award of attorney's fees under Federal Rule of Civil Procedure 11 (Doc. 19). Defendant insists that the extraordinarily high legal barriers to overturning an arbitration award, the preference for arbitration of disputes in the federal labor laws, and the company's agreement to binding arbitration of grievances should have convinced Chamberlain not to appeal the arbitrator's decision. Given the long odds against overturning such a decision, appealing that action was unreasonable under the circumstances, and the union insists that attorney's fees should be awarded it under Rule 11.

## A. Legal Standard

 Federal Rule of Civil Procedure 11(b)(1–2) requires that court filings be instituted for no "improper purpose," and that an attorney in any filings in the court make a reasonable inquiry to conclude that "the claims, defenses, and other legal contents therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Rule 11(c) allows a court to impose sanctions on "attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Courts generally operate "[u]nder the American rule [which applies here], [where] each party normally must bear the burden of its own legal expenses, including attorney's fees." *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 305 (3d Cir.1982). Therefore, granting such sanctions to prevailing parties in disputes is rare, since, "Rule 11 is intended only for exceptional circumstances." *Teamsters Local Union No. 430 v. Cement Express, Inc.,* 841 F.2d 66, 68 (3d Cir.1988). "The standard for testing conduct under Rule 11

---

nates drugs from the workplace, then the arbitrator could not enforce any policy that limited drug testing in the way that Chamberlain advocates.

**4.** This case is unlike cases cited by the plaintiff, such as *Stroehmann Bakeries, Inc. v. Local 776, Int'l Brotherhood of Teamsters,* 969 F.2d 1436 (3d Cir.1992). In that case, the court found that an arbitrator's order reinstating a worker accused of sexual harassment was improper because the arbitrator had not inquired into the truth of sexual harassment allegations against the employee. *Id.* at 1437–38. The court concluded that the arbitrators order conflicted with "the well-defined and dominant public policy concerning sexual harassment in the workplace and its prevention." *Id.* at 1438. Unlike *Stroehmann Bakeries,* where the arbitrator's decision effectively prevented the employer from enforcing a sexual harassment policy alto-

gether, the arbitrator here simply limited under what conditions the company could test the worker. The company also cites to *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l,* 861 F.2d 665 (11th Cir.1989). In that case, the court overturned an arbitration award that reinstated a pilot who had been fired after flying an airplane while intoxicated because "Delta ... was under a duty to prevent the wrongdoing of which its Pilot–in–Command was guilty, and it could not agree to arbitrate that issue." *Id.* at 674. Here, the arbitration award does not require Chamberlain to continue to employ workers who are obviously intoxicated or under the influence of drugs, or even to ignore evidence that they may have been under the influence of drugs at work. Instead, the award simply limits the situations in which the employer may engage in drug testing, which is not required by the law. Such a limitation does not violate any clearly established public policy.

is reasonableness under the circumstances." *Id.*

■ The rule applies in arbitration cases where the court finds "that the losing party litigated in bad faith, vexatiously, or for oppressive reasons." *Mobil,* 679 F.2d at 305. Courts have awarded attorney's fees "if the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail." *Teamsters Local Union No. 765 v. Stroehmann Bros. Co.,* 625 F.2d 1092 (3d Cir.1980); *Teamsters Local Union No. 764 v. J.H. Merritt and Co.,* 770 F.2d 40 (3d Cir.1985) (awarding attorney's fees when a party insisted the arbitrator did not have jurisdiction, but only after submitting to jurisdiction earlier); *Mitchell Plastics, Inc. v. Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union,* 946 F.Supp. 401, 408 (W.D.Pa.1996) (finding attorney's fees appropriate because "Mitchell was simply prolonging a process which a reasonable investigation of the law would have revealed was at its end.").

**B. Discussion**

■ We do not find plaintiff's conduct unreasonable under the circumstances, and therefore will deny the defendant's motion for attorney's fees. While we did not find the company's arguments for overturning the arbitrator's award persuasive, we see no evidence to prove that the company

undertook the appeal "in bad faith, vexatiously, or for oppressive reasons." *Mobil Oil,* 679 F.2d at 305. The prevailing legal standards clearly discourage appeals of arbitration awards, and the deferential standards for those appeals make overturning such awards extremely difficult. The circumstances of such cases therefore require increased circumspection from parties considering appeal of an arbitrator's decision. Fighting a losing battle, however, is not the same as fighting a battle in bad faith.[5] Chamberlain cited the relevant (and recent) legal precedents in its brief, and tried on several arguable grounds to argue that the arbitrator exceeded his contractual mandate and that his award violated public policy against drug use in the workplace. These arguments forced us to consider carefully how the facts of this case fit the legal requirements articulated in arbitration law. Both sides submitted lengthy and detailed briefs citing relevant precedent to support their positions.

In addition, plaintiff's behavior in bringing the suit comported with the legal requirements of reasonableness for arbitration matters. In *Mobil Oil Corp. v. Independent Oil Workers Union,* the Court of Appeals for the Third Circuit upheld a district court's order denying a union's request for attorney's fees, even though the company had appealed an arbitrator's decision and lost. *Mobil Oil,* 679 F.2d at 305. Mobil had challenged

5. The parties agreed in the contract to be bound by the decision of the arbitrator. Plaintiff conceded this point at oral argument, but contended that they had obeyed the award and thus had fulfilled their obligations under the contract. We reject the argument, expressed in cases like *Mitchell Plastics, Inc. v. Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union,* 946 F.Supp. 401 (W.D.Pa.1996) that something like a *per se* rule should apply to the award of attorney's fees in arbitration disputes. Rule 11 sanctions apply to conduct that was not reason-able under the circumstances of the case. We think that the fact that federal law favors private settlement of labor disputes and the use of arbitration, and the fact that the parties contracted to have an arbitrator interpret the terms of the contract are circumstances that the court should consider in deciding whether to award attorney's fees. Such circumstances are only one factor in that determination, however, not a dispositive one. Neither party cites binding precedent for us to determine otherwise, and our research reveals none.

the arbitrator's opinion that the company had improperly terminated a worker who suffered from a mental illness of which Mobil was unaware at the time of the firing. *Id.* at 302. Though the court affirmed, using the highly deferential standard for review of arbitrator's decisions, the court did not find Mobil's conduct so improper as to justify awarding attorney's fees. *Id.* at 302, 305. Among the factors the court used to find Mobil's conduct reasonable under the circumstances were the fact that the company "acted promptly to effect a vacation of the arbitrator's award, thus demonstrating its good faith belief in the strength of the arguments it advanced," Mobil's history of complying with arbitration awards, and the fact that "Mobil presented a substantial legal issue, which Local 8–831 and two federal courts have addressed in detail." *Id.*

The plaintiff here submitted the affidavit of James J. Flaherty, President of Chamberlain Manufacturing Company, as an attachment to its brief in opposition to defendant's motion for attorney's fees (Doc. 26, Exhibit 1). Flaherty avers that the company has complied with the arbitrator's decision since it was issued. (*Id.* at ¶ 2). No employee has undergone drug testing and no action has been taken to violate the award. (*Id.*). No workers have filed grievances alleging improper testing. (*Id.*). Flaherty submits that he has worked for the company for 43 years, and the company has never appealed from an arbitration award.[6] (*Id.* at ¶¶ 1, 3). Numerous awards have gone against the company during that 43–year period. (Id. at ¶ 3). This is also the first appeal during the agreement between the parties, and

the company appealed that decision promptly. (*Id.* at ¶ 4). Flaherty insists that the company appealed the arbitrator's decision "promptly," because of the importance Chamberlain placed on its drug and alcohol policy. (*Id.*).

The defendant does not challenge the statements made in this affidavit, and at oral argument defendant's attorney admitted he had no basis to dispute them. We will therefore accept the statements as true. Flaherty's affidavit demonstrates that Chamberlain's behavior was quite similar to Mobil's conduct in *Mobil v. Independent Oil Workers,* which the Court of Appeals for the Third Circuit concluded did not justify an award of attorney's fees. Chamberlain did not show contempt for the arbitrator's decision, disregarding it and continuing to enforce the testing policy that was at issue in the case. Neither did Chamberlain delay its appeal unreasonably. The Company has no history of willful disregard of arbitrator's decisions, or even of appealing such decisions in the federal courts. Instead, Chamberlain appealed a decision based on a (mistaken) belief that the arbitrator had exceeded his authority under the contract. Both sides have submitted extensive and detailed briefs arguing the merits of the case, recognizing controlling legal precedents and attempting to distinguish those precedents or demonstrate that they are on point with the facts of this case. Accordingly, Chamberlain's conduct in this case meets the standards articulated in *Mobil. See also Teamsters Local Union No. 764 v. J.H. Merritt and Co.,* 770 F.2d 40, 43 n. 2 (3d Cir.1985) (finding that attorney's fees

---

6. Defendant asserted during oral argument that this lack of previous appeals demonstrates the unreasonableness of the current appeal. Plaintiff knew, defendant claims, that appeals of arbitrators' decisions were unreasonable and thus never before did so. We find this argument unconvincing. Defendant

could also have been showing restraint by waiting to appeal an arbitration decision until merit to do so appeared. The appeal here could indicate that defendant's reading of the law indicated that the arbitrator had issued a decision that should be overturned on appeal.

were justified because the defendant had not acted in good faith in refusing to abide by the arbitrator's decision and because the defendant did not cite any cases to support its position).

## V. Conclusion

For the foregoing reasons, we will grant the defendant's motion for summary judgment, but will deny the defendant's motion for attorney's fees. An appropriate order follows.

### ORDER

**AND NOW**, to wit, this 13th day of February 2007:

1. The defendant's motion for summary judgment (Doc. 13) is **GRANTED;**

2. The plaintiff's motion for summary judgment (Doc. 20) is **DENIED;**

3. The defendant's motion for attorney's fees (Doc. 19) is hereby **DENIED;** and

The Clerk of Court is directed to close the case.